O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WALTER JORDAN, | ) | Case No. CV 07-06575 DDP (SSx) |
| | ) | |
| Plaintiff, | ) | [Motion filed on July 28, 2008] |
| | ) | |
| v. | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART THE CROSS-MOTIONS** |
| KARL KIRKMAN, individually | ) | **FOR SUMMARY JUDGMENT** |
| an din his official capacity | ) | |
| as Risk Manager for the City | ) | |
| of Beverly Hills; SANDRA | ) | |
| CURTIS, individually and in | ) | |
| her official capacity as | ) | |
| Human Services director for | ) | |
| the City of Beverly Hills; | ) | |
| THE CITY OF BEVERLY HILLS, a | ) | |
| municipal corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**I.   BACKGROUND**

This case arises from Plaintiff Walter Jordan's termination[1]
by Defendant City of Beverly Hills.  Plaintiff was a member of the
Beverly Hills Police Department for 27 years, until his termination

---

[1]The parties dispute whether Plaintiff was "granted
retirement" or "discharged."  As used here, "termination" indicates
that Plaintiff was placed on inactive employment status by Beverly
Hills (rather than on Plaintiff's own initiative).

1  on July 20, 2007.  (Jordan Decl. ¶ 2)  Plaintiff alleges that
2  additional Defendants Beverly Hills Risk Manager Karl Kirkman and
3  Human Resources Director Sandra Olivencia Curtis placed him on
4  medical disability retirement without his consent, and that he was
5  discharged without notice. (Jordan Decl. ¶ 25; Jordan Decl., Exh.
6  4)

7       Plaintiff filed workers compensation claims in 2006 and 2007.
8  (Kirkman Decl. ¶ 3)  Defendant Kirkman supervises workers
9  compensation claims filed with Beverly Hills.  (Kirkman Decl. ¶ 2)
10 However, the "administration" of these claims is done by an outside
11 agency called Adminsure.  (Id.)  In July 2007, Adminsure gave
12 Kirkman an oral summary of a medical report, which included a
13 doctor's opinion[2] that Plaintiff had a heart-related disability
14 requiring a work restriction of reduced stress.  (D.'s Resp. to
15 Pl.'s Statement of Uncont. Facts and Law 8:1-10 ("D.'s RSPGI");
16 Kirkman Decl. ¶ 3)  As a result of this information, Kirkman
17 determined that Plaintiff was disabled.  (Id.)

18      Kirkman then contacted Plaintiff to set up a meeting to
19 discuss his disability on July 20, 2007.  The parties dispute the
20 purpose of this meeting and what exactly happened next, but
21 Plaintiff did not attend the meeting.  (RSPGI 19)  Kirkman then
22 sent Plaintiff a letter on July 20, informing him that he had been
23 placed on "inactive status," inviting him to apply for medical
24 disability retirement, and stating Beverly Hills was obligated by
25 law to apply on his behalf if he did not.  (Jordan Decl., Exh. 1)

26
27      [2]The parties dispute the exact nature of this medical opinion.
   However, there is no dispute that Kirkman relied exclusively on an
28 oral summary of this opinion to determine Plaintiff was disabled.
   (D.'s RSPGI 8:1-10)

Using the parties' correspondence, a rough outline of what happened next is as follows.

On August 6, 2007, Plaintiff sent Kirkman a letter asking for an appeal from the disability determination, and also requesting pre-termination due process rights, an accommodation for his perceived disability, and to inspect all matters related to his personnel file. (RPSGI 26:6-15) Plaintiff sent a second, similar letter to Kirkman on August 17. (Id. 26:16-22) Kirkman apparently did not respond to these letters. Plaintiff then filed suit on October 10, 2007.

On December 5, 2007, Plaintiff sent a letter to CalPERS[3] informing them that he did not want or qualify for disability retirement. (Jordan Decl., Exh. 5) On February 21, 2008, Plaintiff was copied on a letter from Defendant Olivencia Curtis to CalPERS, informing the agency that Plaintiff was disabled and that his disability retirement was effective as of July 20, 2007. (Jordan Decl., Exh. 4) Plaintiff responded on February 25 with a second letter to CalPERS, contesting his disability.

Despite these letters, at no point did Plaintiff formally appeal his disability determination through CalPERS. (D.'s Addit. Decls. and Exhs. in Reply to Opp'n to Mot. for Summ. Judgment, Exhs. D, E ("D.'s Addit. Exhs.")) Additionally, Plaintiff apparently changed his mind and informed Defendants by email on March 26, 2008 that he was no longer disputing the upcoming pension benefits decision by CalPERS. (Id., Exh. F)

---

[3] The City of Beverly Hills contracts with CalPERS to provide retirement services for its employees. See Beverly Hills Mun. Code 2-5-401.

On April 24, 2008, Plaintiff received a letter from CalPERS confirming his medical disability retirement, and informing him that any appeal should be made through his employer.  (Jordan Decl., Exh. 12)

Plaintiff pleads four causes of action: 1) against all Defendants, for violation of his due process rights, pursuant to 42 U.S.C. § 1983; 2) against Defendant Beverly Hills, for violation of California Government Codes §§ 3304(b)(right to appeal punitive actions, including termination), 3305 (inspection of personnel file), 3306 (same) and 3306.5 (same), pursuant to § 3309.5; 3) against Defendant Beverly Hills, for violation of California's FEHA regarding Plaintiff's perceived disability, Cal. Gov. Code § 12926 et. seq.; 4) against all Defendants, for declaratory relief in regard to any laws acted upon by Defendants in effecting Jordan's termination, which violated his due process rights (on their face or "as applied").

Plaintiff and Defendants now bring cross-motions for summary judgment.

**II.   LEGAL STANDARD**

A.   Summary Judgment

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A genuine issue exists if "the evidence

4

1  is such that a reasonable jury could return a verdict for the

2  nonmoving party"; and material facts are those "that might affect

3  the outcome of the suit under the governing law."  <u>Anderson</u>, 477

4  U.S. at 248.  However, no genuine issue of fact exists "[w]here the

5  record taken as a whole could not lead a rational trier of fact to

6  find for the non-moving party."  <u>Matsushita Elec. Indus. Co. v.</u>

7  <u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

8  **III. DISCUSSION**

9       A.   <u>42 U.S.C. § 1983</u>

10      To state a claim under § 1983, a plaintiff must allege that

11  "(1) the action occurred 'under color of state law' and (2) the

12  action resulted in the deprivation of a constitutional right or

13  federal statutory right."  <u>Jones v. Williams</u>, 297 F.3d 930, 934

14  (9th Cir. 2002).  Defendants do not dispute that their actions

15  occurred under color of state law.  The only question is whether

16  Plaintiff's due process rights were violated.

17           1.   <u>Due Process Claim</u>

18      To prevail on a due process claim under the Fourteenth

19  Amendment, a plaintiff must prove three elements: (1) a property

20  interest protected by the Constitution; (2) a deprivation of the

21  interest by the government; and (3) a lack of required process.

22  <u>Portman v. County of Santa Clara</u>, 995 F.2d 898, 904 (9th Cir.

23  1993).

24      Property interests are not created by the Constitution, but

25  rather by "existing rules or understandings that stem from an

26  independent source such as state law – rules or understandings that

27  secure certain benefits and that support claims of entitlement to

28  those benefits."  <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577

1  (1972).  Defendants do not dispute that Plaintiff was a permanent

2  employee of Beverly Hills with a property interest in his

3  position.[4]  (See D.'s Mot. 9:2-6; D.'s Opp. 4:24-28).

4       Next, Plaintiff must prove that he was deprived of an

5  employment interest when he was placed on medical disability

6  retirement.  Forced disability retirement is analogous to

7  discharge, because both result from the employer's determination

8  that the employee has failed or is unable to comply with his or her

9  duties.  Shari v. Barberic, 669 F. Supp. 985, 990 (C.D.Cal. 1987).

10  Because this determination may contain correctable errors and a

11  correction could result in the employee keeping his or her job,

12  forced retirement is also distinguishable from involuntary

13  termination where there is no protected property interest, such as

14  a mandatory retirement age.  Id.  Defendant argues at length that

15  Plaintiff did not suffer a deprivation because the "substantive

16  issue" for due process is whether Plaintiff was correctly granted

17  disability retirement.  (D.'s Mot. 9:17-21)  This analysis is based

18  in part on the fact that Beverly Hills was required under state

19  law[5] to apply for medical disability retirement on Plaintiff's

20

21       [4]In general, the property interest for California police
   officers comes from California Code § 3304(b), which applies after
22  a police officer completes his or her probationary period of
   employment.  Cal. Gov. Code § 3304(b) (requiring an administrative
23  appeal before a police officer may suffer a "punitive" action);
   Fleisher v. Signal Hill, 829 F.2d 1491, 1494-95 (9th Cir. 1987).

24       [5]California law requires an employer that believes an employee
25  is disabled to retire for disability retirement on behalf of that
   employee, unless the employee either waives this right or applies
26  instead for service retirement.  Cal. Gov. Code §§ 21153, 21156;
   Lazan v. Cty. of Riverside, 140 Cal. App. 4th 453, 464 (Cal. Ct.
27  App. 2006).  These laws operate to keep an employer from
   terminating an employee for a medical disability when he or she is
28  eligible for disability retirement.  Haywood v. Amer. River Fire
                                         (continued...)

1    behalf.  Alternatively, Defendant argues Plaintiff has waived his
2    due process rights because he is no longer contesting the
3    determination by CalPERS that he is entitled to disability
4    retirement. (D.'s Addit. Exhs., Exhs. F, G)  This reasoning ignores
5    the fact that Beverly Hills determined Plaintiff was disabled and
6    then removed him from full employment.  The deprivation arises from
7    his separation from employment due to his disability, not his grant
8    of disability retirement <u>benefits</u> after termination.

9        As CalPERS informed Defendant in its letter of April 24, 2008,
10   the correct route of appeal of the benefits determination was
11   through his employer.  See <u>Binkley v. City of Long Beach</u>, 16 Cal
12   App. 4th 1795, 1807 (Cal. Ct. App. 1993)(any appeal of a decision
13   by CalPERS may be determined by the local agency).  Plaintiff
14   contested this determination with Defendants Beverly Hills and
15   Kirkman as early as August 6, 2007.  (RPSGI 26:6-15) The
16   determination of benefits is therefore related to, but separate
17   from, the determination of disability.  Any waiver by Plaintiff on
18   March 26, 2008 relates to his benefits determination (which may
19   later be impacted by any decision by the Court regarding his
20   disability).

21       Additionally, medical disability retirement is not equivalent
22   to a full salary with benefits, because it negatively affects an
23   employee's property interest, as would any other reduction in
24   salary or benefits.  <u>See, e.g.</u>, <u>White v. Cty. of Sacramento</u>, 31
25   Cal. 3d 676, 682-83 (Cal. 1982)(comparing a mere transfer versus a
26   transfer plus reduction in salary).  This reduction also falls

27   _____

28       [5](...continued)
<u>Protection Dist.</u>, 67 Cal. App. 4th 1292, 1305 (Cal. Ct. App. 1998).

under § 3303.  See Cal. Gov. Code § 3303 (defining "punitive" action as any action leading to "dismissal, demotion, suspension, [or] reduction in salary . . ."); see also Beverly Hills Municipal Code § 2-5-208 ("disciplinary action" against a civil employee includes a "reduction in compensation").  Involuntary disability retirement therefore constitutes a deprivation requiring procedural due process protection.

Lastly, Plaintiff must prove that the deprivation did not provide constitutionally adequate process.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541-42 (1985).  At minimum, a governmental deprivation of life, liberty, or property must be preceded by notice and an opportunity for a hearing that is "appropriate to the nature of the case."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).  Additionally, in California, no punitive action may be taken against a police officer without providing the officer an opportunity for an "administrative appeal."  § 3303(b); see Sanchez v. City of Santa Ana, 915 F.2d 424, 430 (9th Cir. 1990)(citing Baggett v. Gates, 32 Cal. 3d 128 (Cal. 1982)).  Constitutional due process provides minimum standards, but the details of this appeal may be determined by the local agency.  Copley Press, Inc. v. Superior Ct., 39 Cal. 4th 1272, 1288 (Cal. 2006)(citing § 3304(b)(basic rights must be accorded public safety officers by the "public agencies which employ them")).  The purpose of this appeal is to give the officer subjected to a punitive action an opportunity "to attempt to convince the employing agency to reverse its decision, either by demonstrating the falsity of charges which led to punitive action,

1   or through proof mitigating circumstances." <u>Binkley</u>, 16 Cal App.

2   4th at 1807 (internal quotation omitted).

3       Here, there is no dispute that Defendant Kirkman offered to

4   meet with Plaintiff to discuss his disability on July 20, 2007, and

5   that Plaintiff did not attend this meeting.  However, the parties

6   strongly dispute the purpose and scheduling of the meeting.

7   Plaintiff states that Kirkman told him that Beverly Hills had

8   already determined he would be retired based on his disability.

9   (Jordan Decl. ¶ 9) On the other hand, Kirkman states that the

10  meeting was merely to discuss possible accommodations for

11  Plaintiff's disability.  (D.'s Decls. and Exhs. in Support of D's

12  Mot., Kirkman Decl. ¶ 5)  The parties also dispute whether Kirkman

13  required Plaintiff to have the meeting so suddenly that it was

14  impossible for Plaintiff to adequately prepare for it.  (Jordan

15  Decl. ¶ 1; Kirkman Decl. ¶ 5)  These issues are particularly

16  important because Plaintiff alleges that the oral summary which

17  Kirkman used to determine his disability was erroneous.  If

18  Plaintiff was not given the opportunity to contest Kirkman's

19  disability determination, then his due process rights may have been

20  violated.  <u>See</u> <u>Skelly v. State Personnel Bd.</u>, 15 Cal. 194, 215

21  (Cal. 1974)(due process requires:  1) notice and reasons for the

22  proposed action; 2) a copy of the charges and materials on which

23  the action is based; 3) the right to respond to the authority

24  imposing discipline); <u>see also</u> <u>Clements v. Airport Authority of</u>

25  <u>Washoe County</u>, 69 F.3d 321, 333 (9th Cir. 1995)("A biased

26  proceeding is not a procedurally adequate one.").

27      Because there is a genuine dispute of material fact as to

28  whether Plaintiff was provided notice and an opportunity to be

1   heard, the Court denies Plaintiff and Defendants' motions for

2   summary judgment on this claim.

3              2.    Qualified Immunity for Defendants Kirkman and

4                    Olivencia Curtis

5        Under § 1983, an individual defendant cannot be personally

6   liable for a constitutional violation if either:  1) the

7   constitutional or statutory rights are clearly established; or 2) a

8   reasonable officer familiar with the law could have believed that

9   the conduct at issue is constitutional.  Galvin v. Hay, 361 F.3d

10  1134, 1139 (9th Cir. 2004).

11       A clearly established constitutional right is one which

12  provides notice to officers that their conduct is unlawful.  Hope

13  v. Pelzer, 536 U.S. 730, 739-40 (2002).  The act in question does

14  not have to previously have been adjudged unlawful, but the

15  illegality of the act must be "apparent."  Id. (internal quotation

16  omitted).  Here, as noted above, the procedural due process

17  standards required before terminating a tenured public employee are

18  apparent and laid out in both statute and cases.

19       On the second prong, as to Defendant Kirkman, the parties

20  dispute the information necessary to determine whether Kirkman

21  behaved reasonably.  Kirkman's role in investigating and granting

22  disability retirement to Plaintiff is not clear.  As such, there is

23  a genuine dispute of material fact.

24       However, there is no dispute as to Defendant Olivencia Curtis'

25  role.  Olivencia Curtis' actions consisted of attempting to

26  reschedule Plaintiff's meeting with Kirkman,[6] and signing

27  _____

28       [6]Specifically, Olivencia Curtis initially agreed to reschedule
                                                    (continued...)

                                    10

1  Plaintiff's disability determination at Kirkman's recommendation.
2  Plaintiff does not argue or provide any evidence to dispute the
3  fact that Olivencia Curtis had no obligation to verify Kirkman's
4  recommendation, and that Kirkman's authority on the matter was not
5  subject to Olivencia Curtis' approval or review.  (Kirkman Decl. ¶
6  2, 7, 8; Olivencia Curtis Depo 18:20-24, 32:22-33:3) As such,
7  neither of these actions violate Plaintiff's civil rights or are
8  unreasonable.

9       The Court grants Defendant's motion as to qualified immunity
10 for Defendant Olivencia Curtis, and denies Defendants and
11 Plaintiff's motions (for and against qualified immunity) as to
12 Defendant Kirkman.

13      B.   Disability Discrimination under the FEHA § 12940

14      The California Fair Employment & Housing Act (FEHA) prohibits
15 discharge or discrimination in the terms or conditions of
16 employment because of a physical or mental disability.  Cal. Gov.
17 Code § 12940(a).  To state a claim under FEHA, a plaintiff must
18 show:  1) he suffers from a disability; 2) he is otherwise
19 qualified to do his job (with or without reasonable accommodation);
20 and 3) he was subjected to adverse employment action because of his
21 disability.  Claudio v. Regents of U. Of Cal., 134 Cal. App. 4th
22 224, 242 (Cal. Ct. App. 2005).  FEHA also requires an employer to
23 "engage in a timely, good faith, interactive process with the
24 employee" in order to determine "reasonable accommodations, if any,

25

26

27          [6](...continued)
   Kirkman's meeting with Plaintiff on July 20, 2007.  Kirkman then
28 rejected this decision and held the meeting as originally
   scheduled.  (Kirkman Decl. ¶ 6)

in response to a request for reasonable accommodation by a
[disabled] employee."  Cal. Gov. Code § 12940(n).

The parties strongly dispute whether Plaintiff had a
disability at the time of his termination.  Plaintiff submitted to
the Court a doctor's report from May 13, 2006, completed at the
request of the Disability Evaluation Unit of the Workers
Compensation Appeals Board. (Jordan Decl., Exh. 7)  It is unclear
if this is the report that Adminsure summarized for Kirkman.
However, the report states that Plaintiff can "continue to carry
out fulltime work activities."  (Id. at 9) On the other hand, the
report also states that Plaintiff should "avoid excessive stress
and tension."  (Id. at 23) Further placing the matter in dispute,
Plaintiff submitted a second doctor's report from August 9, 2006,
also prepared for the Disability Evaluation Unit, which describes
Plaintiff as having a "permanent disability" and apportioning "70%"
of its cause to "stresses and tensions during the course of his
work activities with the City of Beverly Hills Police Department."
(Id., Exh. 9 at 2) The report also determines that Plaintiff's
general impairment is "20% of the whole person," but that Plaintiff
"plans to retire in two years" and is "capable of continuing on
with fulltime work activities unless there is a worsening of his
cardiac condition."  (Id., Exh. 9 at 3-4) These contradictions are
compounded by Defendant Kirkman's description of the oral summary
he received of Plaintiff's disability, which required a "work
restriction due to stress."  (Kirkman Decl. ¶ 3)

Next, the parties also strongly dispute whether Defendants
engaged in a good faith interactive process.  As noted above in the
due process analysis, the evidence submitted by the parties

1    suggests either that Kirkman may or may not have engaged in a good
2    faith attempt to accommodate Plaintiff's disability.
3         As there are genuine disputes of material fact, the Court
4    denies Plaintiff and Defendants' motions for summary judgment on
5    this claim.
6         C.   <u>POBRA Claims - Cal. Gov. Codes §§ 3304(b), 3305, 3306 and</u>
7              <u>3306.5</u>
8              1.   <u>Supplemental Jurisdiction</u>
9         Federal district courts may exercise supplemental jurisdiction
10   "over all other claims that are so related to claims in the action
11   within such original jurisdiction that they form part of the same
12   case or controversy . . . ."  28 U.S.C. § 1367(a).  A federal court
13   may hear a state law claim when the court has jurisdiction over a
14   federal claim and when the two claims derive from a "common nucleus
15   of operative fact."  <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715,
16   725 (1966).  The exercise of supplemental jurisdiction is also a
17   matter of discretion, and the court may dismiss state claims at
18   times even where it has the power to hear them.  28 U.S.C.
19   1367(b),(c).
20        Defendants argue that the Court cannot exercise supplemental
21   jurisdiction over Plaintiff's state law claims under POBRA, because
22   the statute grants "exclusive jurisdiction" to state courts.
23   Section 3309.5 authorizes proceedings to remedy any violations of
24   the Peace Officers Procedural Bill of Rights ("POBRA").  Cal. Gov.
25   Code § 3309.5.  The statute states that:
26
27        (c) The superior court shall have initial jurisdiction over
          any proceeding . . . for alleged violations of this chapter .
28        . .

                                  13

1
2
3

(d)(1) In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation . . .

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Id.  Defendants' argument is based on the above language, which grants "initial jurisdiction" to "superior courts" to hear cases under POBRA.  Id.  Defendants cite to no cases which discuss the jurisdiction of this statute.[7]  The statute also contains no clear preclusion of federal court jurisdiction and, even if it did, the statute would conflict directly with 28 U.S.C. 1367(a).  Fiedler v. Clark, 714 F.2d 77, 80 (9th Cir. 1983)("[T]he states have no power directly to enlarge or contract federal jurisdiction."); Davet v. City of Cleveland, 456 F.3d 549, 554 (6th cir. 2006)(same).

As such, the Court declines to adopt Defendants' interpretation of POBRA and finds that it has supplemental jurisdiction over Plaintiff's claims under POBRA.

2.   Summary Judgment of POBRA Claims

a.   Section 3304(b)

Section 3304(b) requires that public safety officers be provided an opportunity for administrative appeal before any punitive action is taken against him or her.  Cal. Gov. Code § 3304(b).  As described above, Plaintiff's argument that he was not

23
24
25
26
27
28

---

[7]Instead, Defendant analogizes to the California Tort Claims Act and a line of district court cases finding no federal jurisdiction under § 946.6 of that statute, in part based on the statute's grant of jurisdiction to the state "superior court."  See Hernandez v. McClanahan, 996 F. Supp. 975, 978 (N.D.Cal. 1998)(denying jurisdiction for claims under California Gov. Code § 946.6).  However, these cases are contradicted by another district court in Perez v. Escondido, which persuasively argues that the Hernandez court misapplied California Supreme Court case law.  See Perez v. Escondido, 165 F. Supp. 2d 1111, 1115(S.D.Cal. 2001)(granting jurisdiction for claims arising under § 946.6).

14

granted an appeal is closely related to his due process claim.  The
above analysis also indicates a genuine dispute of material fact.

     As such, the Plaintiff and Defendants' motions are denied as
to this claim.

b.   Sections 3305, 3306 and 3306.5

     Sections 3305 and 3306 provide that a public safety officer
has the right to review and sign documents with adverse comments
that are placed in his or her personnel file, and to respond by
filing a written response.  Cal. Gov. Code § 3305, 3306.  The
formal label of the file is irrelevant under § 3305, as long as the
document has been or potentially will be used by the employer for
personnel decisions.  Cty. of Riverside v. Superior Ct. of
Riverside Cty., 27 Cal. 4th 793, 802 (Cal. 2002).  Section 3306.5
adds a further right of inspection when records "are used or have
been used" to determine "qualifications for employment, promotion,
additional compensation, or termination or other disciplinary
action."  Cal. Gov. Code § 3306.5.

     Before his termination, Plaintiff was notified by Defendant
that he was the subject of an internal criminal and administrative
investigation.  (Jordan Decl. ¶ 4) This investigation was never
completed, because Defendant Beverly Hills decided not to continue
it after his termination.  (Snowden Decl. ¶ 4)  Beverly Hills
admits that the investigative file contains adverse information
relating to alleged misconduct by Plaintiff.  (D.'s Resp. to Pl.'s
Statem. of Uncontested Facts ¶ 16)

     While no case has specifically addressed an incomplete
investigative file, courts have broadly construed Section 3305
regarding what constitutes "use" of files for personnel purposes.

1  See Cty. of Riverside, 27 Cal. 4th at 802-03 (a file's label is

2  irrelevant where it may serve as a basis for affecting the

3  employees' employment).  Also, merely placing a negative report in

4  a file may be considered "punitive" under Section 3304(b), and

5  permit appeal of the decision to place it there.  Hopson v. City of

6  Los Angeles, 139 Cal. App. 3d 347 (Cal. Ct. App 1983).  In light of

7  these decisions, the fact that the investigation has not been

8  completed does not indicate that the investigative file has not

9  been "used" by Beverly Hills for personnel purposes with regard to

10  Plaintiff or that it is not covered by POBRA.  See also Caloca v.

11  Cty. of San Diego, 72 Cal. App. 4th 1209 (1999)("punitive" acts

12  include those which only "may lead" to adverse consequences).

13      Finally, Defendants mention, without argument, that all the

14  documents from the administrative and criminal investigation are

15  privileged, because there is a pending criminal investigation.  See

16  Cty. Of Orange v. Superior Ct., 79 Cal. App. 4th 759 (Cal. Ct. App.

17  2000).  Plaintiff does not address this argument.  On the current

18  record, the Court lacks sufficient information to decide the

19  question of summary judgment as to these claims.

20      As such, the Court requests additional briefing on the issue

21  of whether privilege due to a pending criminal investigation

22  applies here.  Defendants have also offered to show their

23  investigative file ex parte to the Court, which the Court declines

24  at this time.

25  **IV.  CONCLUSION**

26      The Court GRANTS in part Defendants' motion with regard to

27  Defendant Olivencia Curtis and DENIES the rest of its motion.  The

28  Court DENIES the portion of Plaintiff's motion that is not related

1  to its claims under § 3305, 3306, and 3306.5.  The Court ORDERS the

2  parties to submit additional briefing, of no longer than 10 pages,

3  as to whether any privilege based on a criminal investigation

4  applies to Plaintiff's claims under § 3305, 3306, and 3306.5, and

5  the duration for which Plaintiff will not be permitted to view this

6  file.  The briefing shall be due on Friday, October 17 by 5pm.

7

8  IT IS SO ORDERED.

9
   Dated: October 15, 2008
10                                    _____
                                      DEAN D. PREGERSON
11                                    United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28